UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————————— x
ROGER EMERSON, MARY EMERSON,           :   Civil Action No.
ROBERT CAPLIN and MARTHA J.            :
GOODLETT, Individually and on Behalf of :   CLASS ACTION
All Others Similarly Situated,         :
                                       :   COMPLAINT FOR VIOLATIONS OF THE
                Plaintiffs,            :   SECURITIES ACT OF 1933
                                       :
    vs.                                :
                                       :
MUTUAL FUND SERIES TRUST,              :
CATALYST CAPITAL ADVISORS LLC,         :
NORTHERN LIGHTS DISTRIBUTORS LLC,      :
JERRY SZILAGYI, TOBIAS CALDWELL,       :
TIBERIU WEISZ, BERT PARISER, ERIK      :
NAVILOFF and EDWARD WALCZAK,           :
                                       :
                Defendants.            :
———————————————————————— x   DEMAND FOR JURY TRIAL

Plaintiffs, individually and on behalf of all others similarly situated, by plaintiffs'
undersigned attorneys, for plaintiffs' complaint against defendants, allege the following based
upon personal knowledge as to plaintiffs and plaintiffs' own acts and upon information and
belief as to all other matters based on the investigation conducted by and through plaintiffs'
attorneys, which included, among other things, a review of U.S. Securities and Exchange
Commission ("SEC") filings by the Mutual Fund Series Trust, as well as media and analyst
reports about the Catalyst Hedged Futures Strategy Fund (the "Catalyst Futures Fund" or the
"Fund") and press releases and shareholder communications regarding the Fund.   Plaintiffs
believe that substantial additional evidentiary support will exist for the allegations set forth
herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a securities class action on behalf of all persons who purchased shares of
the Catalyst Futures Fund between November 1, 2014 and April 28, 2017 (the "Class Period"),
seeking to pursue remedies under the Securities Act of 1933 (the "1933 Act") against the
registrant for the Fund, certain of the Fund's executive officers and/or trustees, the investment
advisor to the Fund, Catalyst Capital Advisors, LLC ("Catalyst Advisors"), and the underwriter
for the ongoing offering of Fund shares to the public.

2.      The Fund is a mutual fund that invests primarily in long and short call and put
options on Standard & Poor's 500 Index (the "S&P 500") futures contracts and in cash and cash
equivalents, including high quality short-term fixed income securities such as U.S. Treasury
securities.   It is part of the Mutual Fund Series Trust, an open-end investment management
company.

3.      The Catalyst Futures Fund only has a short operating history as a mutual fund.
Prior to August 2013, the Fund was organized as a limited liability company known as Harbor

Assets, LLC ("Harbor Assets"), a hedge fund.  This represented a significant shift, as the change

to a mutual fund allowed Catalyst Advisors to raise capital for the Fund from ordinary retail

investors and the general public.  By contrast, hedge funds are generally limited to high net-

worth individuals and institutional investors, who are presumed to be more sophisticated in

analyzing investment strategies and risks and more capable of conducting their own due

diligence.  Consequently, mutual funds are much more extensively regulated than hedge funds

under the Investment Company Act of 1940 (the "ICA") and other laws, which limit the amount

of risk mutual funds can take on and provide enhanced registration and disclosure obligations,

among other rules and regulations.

4.      After the Catalyst Futures Fund was reorganized as a mutual fund, defendants

marketed and sold shares of the Fund as a low-risk, low-volatility investment with minimal

correlation to the U.S. equity market.  For example, according to the Fund's Prospectuses, the

Fund's investment objective is "*capital appreciation and capital preservation in all market

conditions, with low volatility and low correlation to the US equity market*."  The Prospectuses

also state that the Fund "*places a strong focus on risk management that is intended to provide

consistency of returns and to mitigate the extent of losses. . . .  [T]he Fund employs strict risk

management procedures to adjust portfolio exposure as necessitated by changing market

conditions*."

5.      These statements and others like them in the Fund's Prospectuses and

Registration Statements were inaccurate statements of material fact because they did not disclose

that the Catalyst Futures Fund continued to invest as if it were a hedge fund, taking massive

directional bets against U.S. stock market indexes through complex derivative instruments,

thereby exposing investors to the heightened risk of loss of capital.

6.     Then, in February 2017, the Catalyst Futures Fund experienced a sudden, dramatic drop in the net asset value ("NAV") of Fund shares, with *$600 million* of Fund value evaporating in a matter of days.  In a two-week timespan, between February 2 and February 15, 2017, the NAV for the Fund's HFXAX share class plummeted from $10.59 per share to $8.98 per share, a decline of more than *15%*.  Such a rapid deterioration in NAV is extremely unusual for a mutual fund given the extensive regulatory framework designed to prevent excessive risk-taking and to safeguard mutual fund investors.

7.     Around this same time, several media organizations began reporting on the shocking erosion in Fund value, with news organizations characterizing the loss as a "'*melt-down*'" and stating that the Fund was "'*blowing up*.'"  Given the lack of detail in Fund disclosures to investors, many articles struggled to explain how such a large loss was possible for a mutual fund, especially one that marketed itself as low risk and insulated from market volatility and that was focused on capital preservation.  A question posed by investor news organization *Seeking Alpha* illustrated the quandary: "How does a seemingly low to moderate risk mutual find, whose investment objective is capital preservation . . . suddenly find itself losing 15% in one week?"[1]  The article characterized the Fund's investment strategy as "*not well understood*" with "*risks [that] are not apparent*."  Notwithstanding contrary representations in the Fund's offering materials, the author opined that recent events had revealed the Fund to in fact be a "high-risk derivatives fund that can generate significant principal loss over a very short time frame," and that it was "unfair to market this type of strategy as a 'capital preservation strategy' because *it clearly isn't*."

---

[1]     *Catalyst Hedged Futures Strategy Fund Off the Rails*, Seeking Alpha (Feb. 17, 2017), http://seekingalpha.com/article/4047142-catalyst-hedged-futures-strategy-fund-rails.

8.     As would eventually be revealed over time, the Catalyst Futures Fund had taken out massive option contracts that effectively "shorted" the S&P 500, meaning that the Fund had made a directional bet that the general equity market would not rise significantly in value.  As the market rallied around the time these options were set to expire in mid-February 2017, the Fund experienced rapidly accelerating losses, as it had little time for the market to reverse itself and for the bet to return to profitability.   Given the opaque nature of the Fund's financial disclosures, the size of these bets is not currently known with certainty, even to sophisticated outside investors – let alone ordinary mutual fund investors – although traders and various news organizations have provided estimates as high as $17 billion (compared to the Fund's $3 to $4 billion portfolio).[2]   What is clear is that the Fund placed hundreds of millions of dollars of directional bets completely out of proportion with the marketed risk profile of the Fund.  Even though the Fund's offering materials misleadingly touted its investment strategy as having "low correlation to the US equity market," as the following graph created by market commentators on the Fund demonstrates, the exact *opposite* was true: the Fund and the U.S. equity market were highly correlated in rapidly rising equity markets, which amplified undisclosed risks for the Fund's investors:[3]

---

[2]     *See, e.g.*, Tyler Durden, *Here Is the 'Catalyst' For the Market's Inexplicable Surge: A $17 Billion Trade Gone Wrong*, ZeroHedge (Feb. 16, 2017), http://www.zerohedge.com/news/2017-02-15/multi-billion-trade-meltdown-here-reason-markets-inexplicable-surge.

[3]     In investing, correlation can be either positive or negative, and simply means "the degree to which two securities move in relation to each other." *Correlation*, Investopedia, http://www.investopedia.com/terms/c/correlation.asp.



9.      As these undisclosed risks materialized, the Fund's investors suffered hundreds of millions of dollars in losses, with the value of Fund assets plummeting over *$1 billion* since the beginning of 2017.  Between February 2, 2017 and March 15, 2017, the NAV of the Fund's HFXAX share class, HFXCX share class, and HFXIX share class have each declined approximately *21%*, or $2.22 per share, $2.16 per share and $2.23 per share, respectively.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §22 of the 1933 Act [15 U.S.C. §77v].

11.     The claims asserted herein arise under and pursuant to §§11, 12(a)(2) and 15 of the 1933 Act [15 U.S.C. §§77k, 77l(a)(2) and 77o].  In connection with the acts complained of, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

12.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b).  Defendant Catalyst Advisors, the investment advisor for the Fund, maintains its headquarters in this District.  Many of the acts that are the subject of this action took place in this District.

## PARTIES

**Plaintiffs**

13.     Plaintiff Roger Emerson acquired the Fund's shares pursuant to one or more of the Registration Statements and Prospectuses at issue as set forth in the attached certification and has been damaged thereby.

14.     Plaintiff Mary Emerson acquired the Fund's shares pursuant to one or more of the Registration Statements and Prospectuses at issue as set forth in the attached certification and has been damaged thereby.

15.     Plaintiff Robert Caplin acquired the Fund's shares pursuant to one or more of the Registration Statements and Prospectuses at issue as set forth in the attached certification and has been damaged thereby.

16.     Plaintiff Martha J. Goodlett acquired the Fund's shares pursuant to one or more of the Registration Statements and Prospectuses at issue as set forth in the attached certification and has been damaged thereby.

**Corporate Defendants**

17.     Defendant Mutual Fund Series Trust (the "Trust") is registered under the ICA as an open-end investment company with several investment funds, including the Catalyst Futures Fund, marketed under the Catalyst brand.  The Trust is organized as an Ohio business trust, with a principal place of business in Omaha, Nebraska.  The Catalyst Futures Fund is a mutual fund within the Trust series of mutual funds.  It offers three share classes to investors with the following ticker symbols HFXAX (Class A shares), HFXCX (Class C shares) and HFXIX (Class I shares).

18.     Defendant Catalyst Advisors is the investment advisor for the Fund.  It is headquartered in Huntington, New York.

19.     Defendant Northern Lights Distributors LLC (referred to herein as the "Distributor") is the principal underwriter and the national distributor for the shares of the Fund. The Distributor also served as the Trust's agent for the purpose of the continuous public offering of the Fund's shares.

**Individual Defendants**

20.     Defendant Jerry Szilagyi ("Szilagyi") was at all relevant times the Chairman of the Board of Trustees of the Fund, as well as the Fund's President and Principal Executive Officer.  He signed each of the Registration Statements effective during the Class Period.

21.     Defendant Tobias Caldwell was at all relevant times a member of the Board of Trustees of the Fund and signed each of the Registration Statements effective during the Class Period.

22.     Defendant Tiberiu Weisz was at all relevant times a member of the Board of Trustees of the Fund and signed each of the Registration Statements effective during the Class Period.

23.     Defendant Bert Pariser was at all relevant times a member of the Board of Trustees of the Fund and signed each of the Registration Statements effective during the Class Period.

24.     Defendant Erik Naviloff was at all relevant times the Treasurer and Principal Financial Officer for the Fund.  He signed each of the Registration Statements effective during the Class Period.

25.     Defendant Edward Walczak ("Walczak") was at all relevant times the portfolio manager of the Fund and responsible for its day-to-day management and the investment of Fund assets.

- 7 -

26.     The defendants listed in ¶¶20-24 are referred to herein as the "Trustee Defendants."   The Trustee Defendants and defendant Walczak are referred to herein as the "Individual Defendants."

## BACKGROUND

27.     Defendant Walczak launched Harbor Assets as a hedge fund in December 2005 and served as its portfolio manager.   As a hedge fund, there is limited publicly available information about Harbor Assets' activities, but it appears to have employed a complex options and derivatives investment strategy.

28.     In August 2013, defendant Walczak, together with Catalyst Advisors, converted Harbor Assets into a mutual fund, the Catalyst Futures Fund, within the Catalyst Advisors' mutual fund family.   In a Catalyst Advisors press release announcing the change to a mutual fund, defendant Walczak was quoted as stating, "'I'm pleased to be able to offer the fund I have been managing for the last seven years to a broader investor base that may benefit from the strategy.'"   The conversion to a mutual fund allowed defendants to market and sell the Catalyst Futures Fund to the general public, including retail investors who may not have the same investment sophistication, ability to analyze risks, or resources to conduct independent due diligence as the Fund's prior hedge fund clients.   Generally anyone could now invest in the Fund, so long as they invested the minimum amount and paid the related fees.

29.     When it converted to a mutual fund, the Catalyst Futures Fund became subject to an extensive regulatory framework designed to safeguard the investing public, which was inapplicable when it operated as a hedge fund.   For example, a mutual fund must register as an investment company under the ICA and, if it offers its securities to the public, the offering must be registered under the 1933 Act.   Mutual fund advisors must also file periodic reports with the SEC, provide enhanced disclosures to mutual fund investors, act in the best interests of their

clients, and implement extensive risk management and operational controls and procedures.  In addition, mutual fund shares must be priced daily at NAV, and investors generally must be able to freely redeem their shares.  Because they must maintain portfolio liquidity to satisfy share redemptions and to protect investors, mutual funds are also subject to various investment restrictions, including limits on the amount of risk they may take on, their ability to concentrate investments in an issuer or industry, the amount of leverage they can be exposed to, and the types of securities they can invest in.

30.     While Fund materials touted Harbor Assets' prior performance, claiming that the hedge fund had experienced positive returns every year since its inception, the Fund Fact Sheet acknowledged that its future investment strategies would be restricted by its conversion to a mutual fund: "the predecessor limited liability company was not subject to certain investment restrictions, diversification requirements and other restrictions of the [ICA], which if they had been applicable, might have adversely affected its performance."

31.     The Catalyst Futures Fund has three share classes, each with different associated fees and expenses.  According to the November 1, 2016 Summary Prospectus for the Fund, share Class A, which uses the ticker "HFXAX," charged a maximum sales charge of 5.75%, a deferred sales charge of 1%, and total had annualized operating expenses of 2.26%; share Class C, which uses the ticker "HFXCX," charged total annualized operating expenses of 3.01%; and share Class I, which uses the ticker "HFXIX," charged total annualized operating expenses of 2.01%.

32.     The Fund is marketed as a low-risk, low-volatility mutual fund that is designed to perform regardless of market conditions.  As of November 1, 2016, the Fund's offering materials characterized its investment objective as "capital appreciation and capital preservation in all market conditions, with low volatility and low correlation to the US equity market."  The Fact

Sheet for the Fund states it "is managed as an absolute return, market neutral strategy." The Fund's primary investment strategy involves buying and selling options and option spreads on stock index futures. Given the complexity of valuing these positions, commentators have described the Fund's investment strategy as a "black box," with strategies that are "not well understood" and "risks [that] are not apparent." Its strategy is so unique for a mutual fund that the mutual fund investment research firm, MorningStar, had mischaracterized the Fund for more than three years as a "managed futures fund" until February 2017, when it moved the Fund into the options writing category. Commenting on the mistake, defendant Szilagyi, CEO of Catalyst Advisors, reportedly stated, "'That's not the best fit, either . . . . The Fund is unique. There really isn't a good category for it.'"

33. The difficulty of evaluating the Fund's holdings, its true investment strategy and the strategy's attendant risks is compounded by the fact that the Fund engages in "dynamic hedging," whereby it actively buys and exits positions to manage risk, avoid losses and take profits. Whereas the Fund reports its positions to investors on a quarterly basis, dynamic hedging strategies require regular and ongoing trading in complex financial products.

34. Defendants issued and distributed the following documents in connection with the continuous offering of the Fund's shares to the investing public during the Class Period:

(a) The Fund Prospectuses, which formed part of the Registration Statements, dated November 1, 2014, November 1, 2015, and November 1, 2016 (collectively, the "Prospectuses");

(b) The Fund Summary Prospectuses dated November 1, 2014, November 1, 2015, and November 1, 2016 (collectively, the "Summary Prospectuses");

(c)     The Fund statement of additional information, which was expressly incorporated into the Prospectuses and thereby the Registration Statements, dated November 1, 2014, November 1, 2015, and November 1, 2016;

(d)     The Fund Registration Statements dated November 13, 2014, November 5, 2015, and November 3, 2016 (collectively, the "Registration Statements"); and

(e)     The Fund "Fact Sheet," which was used by defendants to solicit purchasers of Fund shares.

35.     The documents referenced in ¶34 are collectively referred to herein as the "Offering Materials."

## DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS IN THE OFFERING MATERIALS

36.     Defendants made materially false and misleading statements in the Offering Materials regarding the Fund's investment strategy and the risks to investors of investing in Fund shares.  For example, the Offering Materials stated that the Fund's investment strategy "*is capital appreciation and capital preservation in all market conditions, with low volatility and low correlation to the US equity market*."   Similarly, the Fact Sheet for the Fund stated that it "*is managed as an absolute return, market neutral strategy*."   These statements were materially false and misleading because they failed to disclose that the Fund's investment strategy was not "market neutral" with "low" market correlation, but highly correlated to a rapidly rising equity market, which, if that occurred, would eviscerate Fund capital and cause severe losses for Fund investors.

37.     The Offering Materials also failed to disclose the true risks related to the Fund's investment strategy of buying and selling options and options spreads on stock index futures. While the Offering Materials stated that the Fund may occasionally "enter options spreads that

will profit from an established price trend," they stated that "in general, *the strategy does not depend on a prediction of equity market direction, and is designed to produce returns that are not correlated with equity market returns*." Notably, while the Offering Materials mentioned potential "*profits*" from directional market trends, they failed to disclose the risk that the Fund would suffer dramatic losses (20+%) in a rapidly rising equity market.

38. Similarly, while the Offering Materials provided boilerplate risk disclosures – such as "[o]verall stock market risks may also affect the value of the Fund" and "[i]]f the derivative is linked to the performance of an index, it will be subject to the risks associated with changes in that index" – they failed to disclose the concrete and specific risk to investors that the Fund stood to lose hundreds of millions of dollars in NAV as a result of its investment strategy in a rapidly rising equity market. To the contrary, the Offering Materials misleadingly implied that the Fund would *benefit* from purchasing "stock index futures" during a "market advance," as such a strategy "*affords a hedge against a Fund not participating in a market advance when it is not fully invested and serves as a temporary substitute for the purchase of individual securities, which may later be purchased in a more advantageous manner*."

39. The Offering Materials also highlighted the Fund's purportedly robust risk management procedures, which they claimed minimize risks for the Fund's investors and mitigate the extent of any losses. The Offering Materials stated in pertinent part as follows:

> The Fund places a *strong focus on risk management* that is intended to provide *consistency of returns and to mitigate the extent of losses*. Positions are entered on a continuous basis across different option exercise prices and expiration months. Supported by sophisticated options analysis software, *the Fund employs strict risk management procedures to adjust portfolio exposure as necessitated by changing market conditions* . . . .

These statements were false and misleading because the various hedging activities employed by the Fund were themselves a source of significant risk for Fund investors and would significantly increase the extent of losses in the event of a rapidly rising equity market.

40.     In addition, Item 303 of SEC Regulation S-K, 17 C.F.R. §229.303(a)(3)(ii), requires defendants to "[d]escribe any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on the sales or revenues or income from continuing operations."  Similarly, Item 503 of SEC Regulation S-K, 17 C.F.R. §229.503, requires, in the "Risk Factor" section of the Registration Statements and Prospectuses, "a discussion of the most significant factors that make the offering speculative or risky" and requires each risk factor to "adequately describe[]the risk."  The failure to disclose in the Offering Materials the risk of severe losses to Fund investors in the case of a rapidly rising equity market violated 17 C.F.R. §229.303(a)(3)(ii) because it would (and did) have an unfavorable impact on the Fund's net investment income from operations.  The failure also violated 17 C.F.R. §229.503 because this specific risk was not adequately disclosed, or disclosed at all, even though it was one of the most significant factors that made an investment in Fund shares speculative or risky.

41.     Then, in February 2017, the Catalyst Futures Fund experienced a sudden, precipitous decline in the NAV of Fund shares, with *$600 million* of Fund value evaporating in a matter of days.  In a two-week timespan, between February 2 and February 15, 2017, the NAV for the Fund's HFXAX share class plummeted from $10.59 per share to $8.98 per share, a decline of more than *15%*.  Such a rapid deterioration in NAV is extremely unusual for a mutual fund given the extensive regulatory framework designed to prevent excessive risk-taking and to safeguard mutual fund investors.

42.    Around this same time, several media organizations began reporting on the shocking erosion in Fund value, with news organizations characterizing the loss as a "'***meltdown***'" and stating that the Fund was "'***blowing up***.'"   Given the lack of detail in Fund disclosures to investors, many of these articles struggled to explain how such a large loss was possible for a mutual fund, especially one that marketed itself as low risk and relatively insulated from market movements and that was focused on capital preservation.   For example, news organization *Seeking Alpha* posed the question: "How does a seemingly low to moderate risk mutual find, whose investment objective is capital preservation . . . suddenly find itself losing 15% in one week?"[4]   The article characterized the Fund's investment strategy as "***not well understood***" with "***risks [that] are not apparent***."   The author stated that recent events had revealed the Fund to in fact be a "high-risk derivatives fund that can generate significant principal loss over a very short time frame," and that it was "unfair to market this type of strategy as a 'capital preservation strategy' because ***it clearly isn't***."   Likewise, another article noted that "legitimate options strategies . . . typically involve reducing risk, ***not increasing it***," as the options strategies employed by Catalyst Advisors appeared to have done.[5]

43.    As would eventually be revealed over time, the Catalyst Futures Fund had taken out massive options contracts that effectively "shorted" the S&P 500, meaning that the Fund had made a directional bet that the equity market would not rise significantly in value.   As the market rallied around the time these options were set to expire in mid-February 2017, the Fund experienced rapidly accelerating losses, as it had little time for the market to reverse itself and

---

[4]    *Catalyst Hedged Futures Strategy Fund Off the Rail*s, Seeking Alpha (Feb. 17, 2017), http://seekingalpha.com/article/4047142-catalyst-hedged-futures-strategy-fund-rails.

[5]    Paul Jacobs, *Another "Black-Box" Strategy Disappoints Investors*," Palisades Hudson Fin. Group LLC (Mar. 1, 2017), www.palisadeshudson.com/2017/03/another-black-box-strategy-disappoints-investors/.

for the bet to return to profitability. Some news organizations even speculated that the Fund's hedging strategy had actually contributed to the market upswing, as it rushed to buy underlying equity securities to hedge its failing stock index options strategy. Regardless of the impact on the overall market, the need to buy underlying equities in a rising market would likely have contributed to Fund losses, because, as Matt Levine of *Bloomberg* has noted, the Fund would essentially be stuck "buying high and selling low."

44.     Given the opaque nature of the Fund's financial disclosures, the size of these bets is not currently known with certainty even to sophisticated outside investors – let alone ordinary mutual fund investors – although traders and various news organizations have provided estimates as high as $17 billion (compared to the Fund's $3 to $4 billion portfolio).[6] What is clear is that the Fund placed hundreds of millions of dollars of directional bets completely out of proportion with the marketed risk profile of the Fund. Even though the Fund's Offering Materials misleadingly touted its investment strategy as having "low correlation to the US equity market," as the following graph created by a commentator on the Fund demonstrates, the exact ***opposite*** was true: the Fund and the U.S. equity market were highly correlated in rapidly rising equity markets, which amplified undisclosed risks for the Fund's investors:

---

[6]  *See, e.g.,* Tyler Durden, *Here Is the 'Catalyst' For the Market's Inexplicable Surge: A $17 Billion Trade Gone Wrong*, ZeroHedge (Feb. 16, 2017), http://www.zerohedge.comnews2017-02-15/multi-billion-trade-meltdown-here-reason-markets-inexplicable-surge. While representatives of the Fund have publicly disputed the size of the soured bets as estimated by outside financial analysts (without providing the actual figures), they have confirmed the essential sequence of events that led to the Fund's losses and that the extraordinary size of these losses were the result of the Fund's options trading strategy.



45.    As these undisclosed risks materialized, the Fund's investors suffered hundreds of millions of dollars in losses, with the value of Fund assets plummeting over *$1 billion* since the beginning of 2017.   Between February 2, 2017 and March 15, 2017, the NAV of the Fund's HFXAX share class, HFXCX share class and HFXIX share class have each declined approximately *21%*, or $2.22 per share, $2.16 per share and $2.23 per share, respectively.

## CLASS ACTION ALLEGATIONS

46.    Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased shares of the Catalyst Futures Fund during the Class Period (the "Class").   Excluded from the Class are defendants and their families, the officers and directors of the Fund, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which defendants have or had a controlling interest.

47.    The members of the Class are so numerous that joinder of all members is impracticable.   As of December 31, 2016, there were over 120 million HFXAX shares, 39 million HFXCX shares, and 214 million HFXIX shares outstanding.   While the exact number of Class members is unknown to plaintiffs at this time and can only be ascertained through

appropriate discovery, plaintiffs believe that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by the Fund or its agents and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

48.     Common questions of law and fact predominate and include:  (i) whether defendants violated the 1933 Act; (ii) whether defendants omitted and/or misrepresented material facts; and (iii) the extent and appropriate measure of damages.

49.     Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

50.     Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.

51.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## COUNT I

### For Violation of §11 of the 1933 Act
### Against the Trust, the Distributor and the Trustee Defendants

52.     Plaintiffs incorporate all allegations in ¶¶1-51 above by reference.

53.     This Count is brought pursuant to §11 of the 1933 Act on behalf of plaintiffs and the Class against the Trust, the Distributor and the Trustee Defendants.

54. The Registration Statements were inaccurate and misleading, contained untrue statements of material fact, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

55. The Trust is the registrant for the shares of the Fund, and as such is strictly liable for the false statements contained in the Registration Statements. The Distributor, as the Fund's underwriter, and the Trustee Defendants who signed the Registration Statements, were responsible for the contents and dissemination of the Registration Statements.

56. None of the defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statements were true and without omissions of any material facts and were not misleading.

57. By reasons of the conduct herein alleged, each defendant violated, and/or controlled a person who violated, §11 of the 1933 Act.

58. Plaintiffs acquired shares of the Fund during the Class Period and pursuant to the Registration Statements.

59. Plaintiffs and the Class have sustained damages. The value of the shares of the Fund has declined substantially subsequent to and due to defendants' violations.

60. At the times they purchased shares of the Fund, plaintiffs and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein. Less than one year had elapsed from the time that plaintiffs discovered or reasonably could have discovered the facts upon which this complaint is based to the time of filing of the initial complaint in this action. Less than three years elapsed between the time that the securities upon which this Count is brought were offered to the public and the time of the filing of the initial complaint.

- 18 -

## COUNT II

### For Violation of §12(a)(2) of the 1933 Act
### Against All Defendants

61.     Plaintiffs incorporate all allegations in ¶¶1-60 above by reference.

62.     This Count is brought pursuant to §12(a)(2) of the 1933 Act on behalf of plaintiffs and the Class against all defendants.

63.     Defendants were sellers and offerors and/or solicitors of purchasers of the shares of the Fund offered pursuant to the Registration Statements, Prospectuses and other Offering Materials and were motivated by a desire to serve their own financial interests or those of the Fund or Catalyst Advisors.

64.     The Prospectuses contained untrue statements of material fact, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.   Catalyst Advisors', the Individual Defendants' and the Distributor's actions of solicitation included participating in the preparation of the false and misleading Prospectuses and participating in marketing the shares of the Fund to investors.

65.     Defendants owed to the purchasers of Fund shares, including plaintiffs and other Class members, the duty to make a reasonable and diligent investigation of the statements contained in the Prospectuses and corresponding supplements and amendments to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading.   Defendants, in the exercise of reasonable care, should have known of the misstatements and omissions contained in the Prospectuses as set forth above.

66.     Plaintiffs and other members of the Class purchased or otherwise acquired shares of the Fund pursuant to the defective Prospectuses.   Plaintiffs did not know, nor in the exercise

- 19 -

of reasonable diligence could they have known, of the untruths and omissions contained in the Offering Materials for the Funds.

67.     By reason of the conduct alleged herein, defendants violated, and/or controlled a person who violated, §12(a)(2) of the 1933 Act.   Accordingly, plaintiffs and members of the Class who hold shares of the Fund have the right to rescind and recover the consideration paid for their shares of the Fund and hereby elect to rescind and tender those shares to the defendants sued herein.  Plaintiffs and Class members who have sold their shares of the Fund are entitled to rescissory damages.

## COUNT III

### For Violation of §15 of the 1933 Act
### Against Catalyst Advisors and the Individual Defendants

68.     Plaintiffs incorporate all allegations in ¶¶1-67 above by reference.

69.     This Count is brought pursuant to §15 of the 1933 Act on behalf of plaintiffs and the Class against Catalyst Advisors and the Individual Defendants.

70.     Each of the Individual Defendants was a control person of the Fund by virtue of his position as a director, Trustee and/or senior officer of the Fund, the Trust or Catalyst Advisors.  The Individual Defendants each had a series of direct and/or indirect business and/or personal relationships with other Trustees, directors and/or officers and/or major shareholders of the Fund.

71.     Catalyst Advisors managed and controlled the business affairs of the Fund and was a control person of the Fund.  Catalyst Advisors and its directors and/or officers each had a series of direct and/or indirect business and/or personal relationships with the Trustees, directors and/or officers and/or major shareholders of the Fund.

72.     Each of the defendants named herein was each a culpable participant in the violations of §§11 and 12(a)(2) of the 1933 Act alleged in Counts I and II above, based on their having signed the Registration Statements and/or having otherwise participated in the process which allowed the sale of the shares of the Fund to be successfully completed.  By reason of such conduct, the defendants named in this Count are liable pursuant to §15 of the 1933 Act.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for judgment as follows:

A.     Determining that this action is a proper class action, designating plaintiffs as Lead Plaintiffs and certifying plaintiffs as class representatives under Rule 23 of the Federal Rules of Civil Procedure and plaintiffs' counsel as Lead Counsel;

B.     Awarding damages and interest;

C.     Awarding rescission and/or a rescissory measure of damages;

D.     Awarding plaintiffs' reasonable costs, including attorneys' fees; and

E.     Awarding such equitable/injunctive or other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury.

DATED:  April 28, 2017                    ROBBINS GELLER RUDMAN
                                              & DOWD LLP
                                          SAMUEL H. RUDMAN
                                          EVAN J. KAUFMAN


                                          _/s/ Samuel H. Rudman_____
                                          SAMUEL H. RUDMAN

58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
ekaufman@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
DAVID C. WALTON
BRIAN E. COCHRAN
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
davew@rgrdlaw.com
bcochran@rgrdlaw.com

JOHNSON & WEAVER, LLP
FRANK J. JOHNSON
600 West Broadway, Suite 1540
San Diego, CA 92101
Telephone: 619/230-0063
619/255-1856 (fax)
frankj@johnsonweaver.com

JOHNSON & WEAVER, LLP
W. SCOTT HOLLEMAN
99 Madison Avenue, 5th Floor
New York, NY 10016
Telephone: 212/802-1486
212/602-1592 (fax)
scotth@johnsonweaver.com

Attorneys for Plaintiffs

## CERTIFICATION OF PLAINTIFF PURSUANT
## TO THE FEDERAL SECURITIES LAWS

I, ROGER EMERSON, declare the following as to the claims asserted, or to be asserted, under the federal securities laws:

1.    I have reviewed the complaint with my counsel and authorize its filing.

2.    I did not acquire the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action or any other litigation under the federal securities laws.

3.    I am willing to serve as a representative party on behalf of the class, including testifying at deposition or trial, if necessary.

4.    I made the following transactions during the Class Period in the securities that are the subject of this action.

See Schedule A

| **Acquisitions:** | Date Acquired & Ticker Symbol | Number of Shares Acquired | Acquisition Price Per Share |
|---|---|---|---|
| | | | |

| **Sales:** | Date Sold & Ticker Symbol | Number of Shares Sold | Selling Price Per Share |
|---|---|---|---|
| | | | |

5.    I will not accept any payment for serving as a representative party beyond my pro-rata share of any recovery, except reasonable costs and expenses – such as lost wages and travel expenses – directly related to the class representation, as ordered or approved by the Court pursuant to law.

6.    I have not sought to serve or served as a representative party for a class in an action under the federal securities laws within the past three years, except if detailed below:

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 26th day of April 2017.

DocuSigned by:

*Roger Emerson*

B65192D0C7C04C3...

**ROGER EMERSON**

DocuSign Envelope ID: 3DD7B6B4-2A2E-4DD9-9D1F-LE23T598/CC1

Schedule A

**Acquisitions:**

**7/17/15 Buy HFXAX 11,981.567 shares at $10.85/share**

**12/21/15 Reinvest dividends HFXAX 151.201 shares at $10.88/share**

**12/20/16 Reinvest dividends HFXAX 1247.969 shares at $10.01/share**

**Sales:**

**9/9/16 Sell HFXAX 580.913 shares at $12.05/share**

**Total remaining shares as of 4/26/17 - 12,799.824**

## CERTIFICATION OF PLAINTIFF PURSUANT
## TO THE FEDERAL SECURITIES LAWS

I, MARY EMERSON, declare the following as to the claims asserted, or to be asserted, under the federal securities laws:

1. I have reviewed the complaint with my counsel and authorize its filing.

2. I did not acquire the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action or any other litigation under the federal securities laws.

3. I am willing to serve as a representative party on behalf of the class, including testifying at deposition or trial, if necessary.

4. I made the following transactions during the Class Period in the securities that are the subject of this action.

See Schedule A

| **Acquisitions:** | Date Acquired & Ticker Symbol | Number of Shares Acquired | Acquisition Price Per Share |
|---|---|---|---|

| **Sales:** | Date Sold & Ticker Symbol | Number of Shares Sold | Selling Price Per Share |
|---|---|---|---|

5. I will not accept any payment for serving as a representative party beyond my pro-rata share of any recovery, except reasonable costs and expenses – such as lost wages and travel expenses – directly related to the class representation, as ordered or approved by the Court pursuant to law.

6. I have not sought to serve or served as a representative party for a class in an action under the federal securities laws within the past three years, except if detailed below:

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 26th day of April 2017.

DocuSigned by:

Mary Emerson

B65192D0C7C04C3...

MARY EMERSON

## Schedule A

### Acquisitions:

7/17/15 Buy HFXAX 6,728.111 shares at $10.85/share
12/21/15 Reinvest dividend HFXAX 84.905 shares at $10.88/share
12/20/16 Reinvest dividend HFXAX 507.102 shares at $10.01/share

### Sales:

4/1/16 Sell HFXAX 229.779 shares at $10.88/share
 4/20/16 Sell HFXAX 227.058 shares at $10.57/share
5/16/16 Sell HFXAX 212.955 shares at $11.27/share
6/15/16 Sell HFXAX 210.896 shares at $11.38/share
 7/18/16 Sell HFXAX 216.216 shares at $11.10/share
8/16/16 Sell HFXAX 204.953 shares at $11.71/share
9/15/16 Sell HFXAX 198.840 shares at $12.07/share
10/17/16 Sell HFXAX 198.675 shares at $12.08/share
11/16/16 Sell HFXAX 200.669 shares at $11.96/share
12/15/16 Sell HFXAX 218.978 shares at $10.96/share
2/27/17 Sell HFXAX 168.801 shares at $8.59/share

## CERTIFICATION OF PLAINTIFF PURSUANT
## TO THE FEDERAL SECURITIES LAWS

I, ROBERT CAPLIN, declare the following as to the claims asserted, or to be asserted, under the federal securities laws:

1.    I have reviewed the complaint with my counsel and authorize its filing.

2.    I did not acquire the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action or any other litigation under the federal securities laws.

3.    I am willing to serve as a representative party on behalf of the class, including testifying at deposition or trial, if necessary.

4.    I made the following transactions during the Class Period in the securities that are the subject of this action.

**Acquisitions:**

| Date Acquired & Ticker Symbol | Number of Shares Acquired | Acquisition Price Per Share |
|---|---|---|

See Schedule A Attached

**Sales:**

| Date Sold & Ticker Symbol | Number of Shares Sold | Selling Price Per Share |
|---|---|---|

See Schedule A Attached

5.    I will not accept any payment for serving as a representative party beyond my pro-rata share of any recovery, except reasonable costs and expenses – such as lost wages and travel expenses – directly related to the class representation, as ordered or approved by the Court pursuant to law.

6.    I have not sought to serve or served as a representative party for a class in an action under the federal securities laws within the past three years, except if detailed below:

DocuSign Envelope ID: B0E65BE8-3B7E-49C4-85CA-78E90C3F6237

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 26th day of April 2017.

DocuSign by:

*Robert Caplin*

4AD15E1E60734B4...

ROBERT CAPLIN

# SCHEDULE A

## Robert Caplin's Catalyst Hedged Futures Strategy Fund (HFXIX) Transactions

### Acquisitions

| Date Acquired | Amount of Securities Acquired | Price |
|---|---|---|
| IRA | | |
| 09/16/2016 | 2,798.354 | $12.15 |
| 12/19/2016 | 208.226 | $10.09 |
| 12/19/2016 | 91.689 | $10.09 |
| Non-Qualified | | |
| 09/16/2016 | 2,304.527 | $12.15 |
| 12/19/2016 | 171.481 | $10.09 |
| 12/19/2016 | 75.508 | $10.09 |
| Roth IRA | | |
| 08/08/2016 | 514.58 | $11.66 |
| 09/30/2016 | 245.902 | $12.20 |
| 12/19/2016 | 56.588 | $10.09 |
| 12/19/2016 | 24.918 | $10.09 |

### Sales

| Date Sold | Amount of Securities Sold | Price |
|---|---|---|
| IRA | | |
| 03/02/2017 | 3,098.269 | $8.50 |
| Non-Qualified | | |
| 03/02/2017 | 2,551.516 | $8.50 |
| Roth IRA | | |
| 03/02/2017 | 841.9880 | $8.50 |

## CERTIFICATION OF PLAINTIFF PURSUANT
## TO THE FEDERAL SECURITIES LAWS

I, Martha J. Goodlett, declare the following as to the claims asserted, or to be asserted, under the federal securities laws:

1.      I have reviewed the complaint with my counsel and authorize its filing.

2.      I did not acquire the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action or any other litigation under the federal securities laws.

3.  ·   I am willing to serve as a representative party on behalf of the class, including testifying at deposition or trial, if necessary.

4.      I made the following transactions during the Class Period in the securities that are the subject of this action.

See Schedule A

| **Acquisitions:** | Date Acquired & Ticker Symbol | Number of Shares Acquired | Acquisition Price Per Share |
|---|---|---|---|
| | | | |

| **Sales:** | Date Sold & Ticker Symbol | Number of Shares Sold | Selling Price Per Share |
|---|---|---|---|
| | | | |

5.      I will not accept any payment for serving as a representative party beyond my pro-rata share of any recovery, except reasonable costs and expenses – such as lost wages and travel expenses – directly related to the class representation, as ordered or approved by the Court pursuant to law.

6.      I have not sought to serve or served as a representative party for a class in an action under the federal securities laws within the past three years, except if detailed below:

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 26th day of April 2017.

DocuSigned by:

*Martha J. Goodlett*

9DF81D11E05D974...
Martha J. Goodlett

Schedule A

**Acquisitions:** HFXCX
Purchase 3783.23 shares at $9.78 on 1/26/17
Purchase 2824.36 shares at $11.33 on 8/5/16
Purchase 4512.64 shares at $11.08 on 6/10/16
Purchase 270.76 shares at $11.08 for $3004.75 on 6/10/16

**Sales:** HFXCX
Sold 270.76 shares at $8.16 on 3/14/17
Sold 11,120.23 shares at $8.16 on 3/14/17