UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

——————————————————— x

ROGER EMERSON, MARY EMERSON,
ROBERT CAPLIN and MARTHA J.
GOODLETT, Individually and on Behalf of
All Others Similarly Situated,

                          Plaintiffs,

        vs.

MUTUAL FUND SERIES TRUST,
CATALYST CAPITAL ADVISORS LLC,
NORTHERN LIGHTS DISTRIBUTORS LLC,
JERRY SZILAGYI, TOBIAS CALDWELL,
TIBERIU WEISZ, BERT PARISER, and
ERIK NAVILOFF,

                        Defendants.

——————————————————— x

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No. 2:17-cv-02565-SJF-SIL

<u>CLASS ACTION</u>

LEAD PLAINTIFFS' MEMORANDUM OF
LAW IN SUPPORT OF MOTION FOR
FINAL APPROVAL OF SETTLEMENT
AND APPROVAL OF PLAN OF
ALLOCATION

4819-5015-8789.v1

## TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ..................................................................................1

II.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND
      ADEQUATE, AND WARRANTS FINAL APPROVAL...................................................4

      A.    The Law Favors and Encourages Settlement of Class Action Litigation ...............4

      B.    The Standards for Final Approval...........................................................................4

      C.    The Settlement Was Reached by Adequate Representatives Through
            Robust Arm's-Length Negotiations and Is Presumptively Fair..............................6

      D.    The Settlement Is Substantively Fair, Reasonable, and Adequate.........................7

            1.    The Complexity, Expense, and Likely Duration of the Litigation
                  Support Approval of the Settlement ............................................................8

            2.    The Reaction of the Settlement Class to the Settlement ...........................10

            3.    The Stage of the Proceedings and the Amount of Information
                  Available to Counsel Support Approval of the Settlement.......................13

            4.    The Risks of Establishing Liability and Damages Support
                  Approval of the Settlement ........................................................................14

                  a.    Risks to Proving Liability ..............................................................15

                  b.    Risks Related to Negative Causation and Damages ......................16

            5.    The Risks of Maintaining Class Certification............................................17

            6.    The Ability of Defendants to Withstand a Greater Judgment...................18

            7.    The Range of Reasonableness of the Settlement Amount in Light
                  of the Best Possible Recovery and all the Attendant Risks of
                  Litigation Support Approval of the Settlement.........................................19

      E.    Application of the Additional Factors Identified in Rule 23(e)(2) Supports
            Approval of the Settlement as Fair, Reasonable, and Adequate..........................20

III.  THE PLAN OF ALLOCATION FOR THE PROCEEDS OF THE
      SETTLEMENT TREATS SETTLEMENT CLASS MEMBERS EQUITABLY
      CONSISTENT WITH RULE 23(e)(2)(D).................................................................22

- i -

**Page**

IV.   NOTICE TO THE SETTLEMENT CLASS SATISFIED THE REQUIREMENTS
      OF RULE 23 AND DUE PROCESS...................................................................................23

V.    CONCLUSION...............................................................................................................25

4819-5015-8789.v1

# TABLE OF AUTHORITIES

Page

## CASES

*Altayyar v. Etsy, Inc.*,
    242 F. Supp. 3d 161 (S.D.N.Y. 2017),
    *aff'd*, 735 F. App'x. 35 (2d Cir. 2018)................................................................15

*Anixter v. Home-Stake Prod. Co.*,
    77 F.3d 1215 (10th Cir. 1996) ............................................................................9

*Burns v. FalconStor Software, Inc.*,
    No. 10 CV 4572, 2014 WL 12917621
    (E.D.N.Y. Apr. 11, 2014)....................................................................................13

*City of Providence v. Aeropostale Inc.*,
    No. 11 civ. 7132, 2014 WL 1883494
    (S.D.N.Y. May 9, 2014),
    *aff'd sub nom. Arbuthnot v. Pierson*,
    607 F. App'x. 73 (2d Cir. 2015) ...........................................................................6

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974),
    *abrogated on other grounds by, Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000) .......................................................................4, 14, 19

*Ebbert v. Nassau Cty.*,
    No. CV 05-5445 AKT, 2011 WL 6826121
    (E.D.N.Y. Dec. 22, 2011) ...................................................................................18

*Edwards v. N. Am. Power & Gas, LLC*,
    No. 3:14-cv-01714 (VAB), 2018 WL 3715273
    (D. Conn. Aug. 3, 2018) .....................................................................................24

*Glickenhaus & Co. v. Household Int'l, Inc.*,
    787 F.3d 408 (7th Cir. 2015) ..............................................................................10

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
    298 F.R.D. 171 (S.D.N.Y. 2014) ........................................................................24

*In re "Agent Orange" Prod. Liab. Litig.*,
    597 F. Supp. 740 (E.D.N.Y. 1984),
    *aff'd*, 818 F.2d 145 (2d Cir. 1987).....................................................................19

*In re Alloy, Inc. Sec. Litig.*,
    No. 03-1597, 2004 WL 2750089
    (S.D.N.Y. Dec. 2, 2004)......................................................................................14

- iii -

Page

*In re AOL Time Warner Inc.*,
No. 02 cv 5575, 2006 WL 903236
(S.D.N.Y. Apr. 6, 2006) ................................................................................14

*In re Apollo Grp., Inc. Sec. Litig.*,
No. CV-04-2147-PHX-JAT, 2008 WL 3072731
(D. Ariz. Aug. 4, 2008),
*rev'd*, No. 08-16971, 2010 WL 5927988
(9th Cir. June 23, 2010) ................................................................................10

*In re Ashanti Goldfields Sec. Litig.*,
No. CV-00-717 (DGT), 2005 U.S. Dist. LEXIS 28431
(E.D.N.Y. Nov. 15, 2005) ..............................................................................4

*In re Bear Stearns Cos., Inc.*,
909 F. Supp. 2d 259 (S.D.N.Y.  2012) ..................................................... *passim*

*In re Citigroup Inc. Sec. Litig.*,
No. 09 MD 2070 (SHS), 2014 WL 2112136
(S.D.N.Y. May 20, 2014) ................................................................................4

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
No. MDL 12-2389, 2015 WL 6971424
(S.D.N.Y. Nov. 9, 2015),
*aff'd*, 674 F. App'x. 37 (2d Cir. 2016) ........................................................6, 8

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
No. 02-CV-3400 (CM)(PED), 2010 WL 4537550
(S.D.N.Y. Nov. 8, 2010) ..........................................................................10, 22

*In re Gilat Satellite Networks*, *Ltd.*,
No. CV-02-1510, 2007 WL 1191048
(E.D.N.Y. Apr. 19, 2007) ................................................................................8

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ..........................................................7, 17, 18

*In re HealthSouth Corp. Sec. Litig.*,
334 F. App'x. 248 (11th Cir. 2009) ..............................................................21

*In re IMAX Sec. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) ..............................................................17, 22

- iv -

Page

*In re Indep. Energy Holdings PLC Sec. Litig.*,
No. 00 Civ. 6689 (SAS), 2003 WL 22244676
(S.D.N.Y. Sept. 29, 2003) ...................................................................................6

*In re Initial Pub. Offering Sec. Litig.*,
671 F. Supp. 2d 467 (S.D.N.Y. 2009) ...........................................................8, 22

*In re Merrill Lynch Tyco Research Sec. Litig.*,
249 F.R.D. 124 (S.D.N.Y. 2008) .......................................................................23

*In re MetLife Demutualization Litig.*,
689 F. Supp. 2d 297 (E.D.N.Y. 2010) ...............................................................13

*In re NASDAQ Market-Makers Antitrust Litig.*,
187 F.R.D. 465 (S.D.N.Y. 1998) .........................................................................7

*In re Polaroid ERISA Litig.*,
240 F.R.D. 65 (S.D.N.Y. 2006) ...........................................................................7

*In re State Street Bank & Trust Co. Fixed Income Funds Inv. Litig.*,
774 F. Supp. 2d 584 (S.D.N.Y. 2011) ...............................................................16

*In re Telik, Inc. Sec. Litig.*,
576 F. Supp. 2d 570 (S.D.N.Y. 2008) ....................................................9, 11, 17

*Janus Capital Grp., Inc. v. First Derivative Traders*,
131 S. Ct. 2296 (2011) .......................................................................................10

*Lomeli v. Sec. & Inv. Co. Bahrain*,
546 F. App'x. 37 (2d Cir. 2013) .........................................................................25

*Maley v. Del Global Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002) ...................................................6, 13, 18

*McLaughlin v. IDT Energy*,
No. 14 CV 4107 (ENV)(RML), 2018 WL 3642627
(E.D.N.Y. July 30, 2018) ...................................................................................24

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) ...........................................................................................23

*Newman v. Stein*,
464 F.2d 689 (2d Cir. 1972) ...............................................................................19

- v -

**Page**

*Prasker v. Asia Five Eight LLC*,
 No. 08 Civ. 5811(MGC), 2010 WL 476009
 (S.D.N.Y. Jan. 6, 2010)....................................................................................18

*Robbins v. Koger Props., Inc.*,
 116 F.3d 1441 (11th Cir. 1997) ..........................................................................9

*Shapiro v. JPMorgan Chase & Co.*,
 No. 11 Civ 8331, 2014 WL 1224666
 (S.D.N.Y. Mar. 24, 2014) ...................................................................................6

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
 258 F. Supp. 2d 254 (S.D.N.Y. 2003)..................................................................9

*Teachers Ret. Sys. of La. v. A.C.L.N., Ltd.*,
 No. 01-Civ-11814 (MP), 2004 WL 1087261
 (S.D.N.Y. May 14, 2004)...................................................................................14

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
 396 F.3d 96 (2d Cir. 2005)..................................................................... *passim*

*White v. First Am. Registry, Inc.*,
 No. 04 Civ 1611 (LAK), 2007 WL 703926
 (S.D.N.Y. Mar. 7, 2007) .....................................................................................8

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
 §77k..................................................................................................................14, 15
 §77l.........................................................................................................................14
 §77l(a)(2) ...............................................................................................................14
 §77z-1(a)(7) ...........................................................................................................25
 §77z-1(b)(1) .............................................................................................................6
 §78u-4..........................................................................................................6, 7, 12

Page

Federal Rules of Civil Procedure
    Rule 23(a)...........................................................................................................18
    Rule 23(b)(3).......................................................................................................18
    Rule 23(c)(1)(C)..................................................................................................17
    Rule 23(c)(2).......................................................................................................23
    Rule 23(c)(2)(B)............................................................................................23, 25
    Rule 23(e)....................................................................................................1, 4, 23
    Rule 23(e)(2)...........................................................................................4, 5, 8, 20
    Rule 23(e)(2)(C)(i)..............................................................................................14
    Rule 23(e)(2)(C)(ii).......................................................................................20, 21
    Rule 23(e)(2)(C)(iii)............................................................................................21
    Rule 23(e)(2)(C)(iv)............................................................................................21
    Rule 23(e)(2)(D)..................................................................................................22
    Rule 23(e)(3).................................................................................................5, 21

## SECONDARY AUTHORITIES

2 McLaughlin on Class Actions (9th ed. 2012)
    §6.22...................................................................................................................22

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Court-appointed Lead Plaintiffs Eugene Almendinger, Jeffrey Berkowitz, Debra Folk, Earle Folk, Maryann Lovelidge, and Tom Lovelidge (collectively, "Lead Plaintiffs"), on behalf of themselves and all other members of the proposed Settlement Class,[1] respectfully submit this memorandum of law in support of their motion for final approval of the proposed Settlement of the above-captioned class action (the "Action"), approval of the proposed plan of allocation for distributing the proceeds of the Settlement (the "Plan of Allocation"), and final certification of the Settlement Class.

## I.    PRELIMINARY STATEMENT

As detailed in the Stipulation, Lead Plaintiffs and the Mutual Fund Series Trust (the "Trust"), Catalyst Capital Advisors, LLC ("Catalyst"), Northern Lights Distributors LLC ("NLD"), Jerry Szilagyi, Tobias Caldwell, Tiberiu Weisz, Bert Pariser, and Erik Naviloff (each a "Defendant" and collectively, "Defendants") have agreed to a settlement of the claims in the Action, and the release of all Released Claims, in exchange for a payment of $3,325,000.  The terms of the Settlement are set forth in the Stipulation, which was previously filed with the Court.  ECF No. 92-1.

This recovery is a favorable result for the Settlement Class given, principally, the dismissal of the Action with prejudice in response to Defendants' joint motion to dismiss, and the substantial risks and expenses of continued litigation, including the risk of not prevailing on Lead Plaintiffs' pending motion pursuant to Rule 59(e) to alter or amend the Dismissal Judgment and for leave to file a [Proposed] Second Amended Complaint, and ultimately recovering nothing at all.

The Settlement was reached only after Lead Plaintiffs and Co-Lead Counsel developed a strong understanding of the strengths and weaknesses of the claims and following extensive arm's-

---

[1]    All capitalized terms used herein that are not defined have the same meanings given to them in the Stipulation and Agreement of Settlement, dated March 5, 2020 (the "Stipulation").  ECF No. 92-1.

length negotiations with Defendants, assisted by a well-respected mediator.  As more fully described in the Joint Declaration of Evan J. Kaufman and Michael H. Rogers in Support of Lead Plaintiffs' Motion for Final Approval of Settlement and Approval of Plan of Allocation and an Award of Attorneys' Fees and Expenses and Lead Plaintiff Awards (the "Joint Declaration" or "Joint Decl."), filed herewith,[2] by the time the Settlement was agreed to, Co-Lead Counsel had engaged in a thorough factual and legal investigation that included, among other things: (i) reviewing SEC filings by the Trust; (ii) reviewing publicly available news articles and reports about the Trust, Catalyst, and the Fund; (iii) reviewing press releases, investor communications, other public statements issued by Defendants; (iv) reviewing media reports about the Defendants; (v) conducting detailed analyses of the Fund and its assets, including making use of proprietary sources of market data, such as Bloomberg; (vi) retaining and consulting with financial industry experts familiar with mutual funds and the derivative trading strategies at issue; (vii) drafting two amended complaints; (viii) briefing Defendants' joint motion to dismiss; (ix) interviewing former defendant Edward Walczak, and gathering information about Lead Plaintiffs' claims; (x) briefing Lead Plaintiffs' Motion to Alter or Amend; and (xi) engaging in mediated settlement negotiations with Defendants. *See generally* Joint Decl., ¶¶37-50, 57.

The Settlement is the product of diligent arm's-length negotiations between the Parties, under the auspices of a respected and experienced mediator, Michelle Yoshida of Phillips ADR (the "Mediator").  Co-Lead Counsel persisted in negotiations until they achieved an amount they thought

---

[2]    The Joint Declaration is an integral part of this submission and, for the sake of brevity in this memorandum, the Court is respectfully referred to it for a detailed description of, *inter alia*: the history of the Action; the nature of the claims asserted; the negotiations leading to the Settlement; and the risks and uncertainties of continued litigation; among other things.  Citations to "¶" in this memorandum refer to paragraphs in the Joint Declaration and all exhibits are attached to the Joint Declaration.

was in the best interests of the Settlement Class, while accounting for the substantial risk that the Court or Second Circuit would not revive Lead Plaintiffs' claims. Although Lead Plaintiffs believe that their claims had merit, they also recognize that they faced a difficult road in prevailing on the merits, by either convincing this Court or the Second Circuit to reinstate Lead Plaintiffs' claims through the [Proposed] Second Amended Complaint. After discussions that spanned from May 2019 to the end of November 2019, the Parties ultimately accepted the Mediator's recommendation that the case settle for $3.25 million, subject to the negotiation of a mutually acceptable stipulation of settlement and supporting exhibits. Joint Decl., ¶¶9-10, 56-58.[3]

In light of the impediments to recovery, the legal hurdles and risks involved in proving liability and damages, as well as the delay and expense had this case continued to summary judgment, trial, or appeal, as discussed further below and in the Joint Declaration, Lead Plaintiffs respectfully submit that the Settlement is fair, reasonable, and adequate, and warrants final approval by the Court. *See* Declarations of Debra Folk, Eugene Almendinger, Earle Folk, Jeffrey Berkowitz, Maryann Lovelidge, and Tom Lovelidge, Exs. 2 to 7.

Additionally, Lead Plaintiffs request that the Court approve the proposed Plan of Allocation for the distribution of the Net Settlement Fund to Settlement Class Members. The Plan of Allocation was developed by Co-Lead Counsel in consultation with Lead Plaintiffs' consulting damages expert,

---

[3]      Separately, after the proposed Settlement was reached, on January 27, 2020, the SEC and Commodity Futures Trading Commission announced they had commenced, and concurrently settled, administrative proceedings against Catalyst and Szilagyi regarding the Fund and alleged misconduct from December 1, 2016 through February 28, 2017 (the "Settled Orders"). The Settled Orders involve alleged violations of the Investment Advisers Act of 1940 and the Commodity Exchange Act. Neither Catalyst nor Szilagyi admitted any liability and they have agreed to pay, in the aggregate, $10.5 million, which will be distributed to investors through a Fair Fund process. *See* https://www.sec.gov/news/press-release/2020-21. The SEC and CFTC also have filed civil complaints against former defendant Edward Walczak.

and provides a reasonable and equitable method for allocating the Net Settlement Fund among Settlement Class Members who submit valid claims.

## II.     THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND WARRANTS FINAL APPROVAL

### A.     The Law Favors and Encourages Settlement of Class Action Litigation

Public policy favors the settlement of disputed claims among private litigants, particularly in class actions. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("*Visa*") ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context."); *In re Ashanti Goldfields Sec. Litig.*, No. CV-00-717 (DGT), 2005 U.S. Dist. LEXIS 28431, at *3-*4 (E.D.N.Y. Nov. 15, 2005).[4]  This policy would be well-served by approval of the Settlement of this complex securities class action that, absent negotiated resolution, would likely consume years of additional time and resources of both this Court and the Second Circuit.

### B.     The Standards for Final Approval

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be presented to the Court for approval.  The Settlement should be approved if the Court finds it "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  In ruling on final approval of a class settlement, the Second Circuit has held that a court should examine both the negotiating process leading to the settlement, and the settlement's substantive terms.  *See Visa*, 396 F.3d at 116; *In re Citigroup Inc. Sec. Litig.*, No. 09 MD 2070 (SHS), 2014 WL 2112136, at *2-*3 (S.D.N.Y. May 20, 2014).

The standards for approval of a settlement are well-established within the Second Circuit.  In *Detroit v. Grinnell Corp.*, the Second Circuit held that the following factors should be considered:

---

[4]     All internal quotations and citations are omitted unless otherwise stated.

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by, Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); *see also Visa*, 396 F.3d at 117.

Additionally, pursuant to the 2018 amendments to Rule 23(e)(2), a court may approve a settlement as "fair, reasonable, and adequate" after considering the following core factors, most of which overlap with the *Grinnell* factors:

(A)  whether the class representatives and class counsel have adequately represented the class;

(B)  whether the proposal was negotiated at arm's length;

(C)  whether the relief provided for the class is adequate, taking into account:

    i.   the costs, risks, and delay of trial and appeal;

    ii.  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    iii. the terms of any proposed ward of attorneys' fees, including timing of payment; and

    iv.  any agreement required to be identified under Rule 23(e)(3); and

(D)  whether the proposal treats class members equitably relative to each other.

For the reasons discussed herein, the proposed Settlement meets the criteria set forth by the Second Circuit and the federal rules and it should be approved as fair, reasonable, and adequate.

4819-5015-8789.v1

**C.      The Settlement Was Reached by Adequate Representatives Through Robust Arm's-Length Negotiations and Is Presumptively Fair**

A settlement is entitled to a "presumption of fairness, adequacy, and reasonableness" when "reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Visa*, 396 F.3d at 116; *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, No. MDL 12-2389, 2015 WL 6971424, at *3 (S.D.N.Y. Nov. 9, 2015), *aff'd*, 674 F. App'x. 37 (2d Cir. 2016). However, formal discovery is not required, *see, e.g.*, *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 363 (S.D.N.Y. 2002), and, indeed, the PSLRA prohibits formal discovery pending a decision on a motion to dismiss, *see* 15 U.S.C. §77z-1(b)(1).

The Settlement here merits such a presumption of fairness because it was achieved after thorough arm's-length negotiations between well-informed and experienced counsel, under the supervision of an experienced Mediator, and after a rigorous investigation into the claims.[5] *See* Joint Decl., ¶¶9-11, 56-58. Lead Plaintiffs and Co-Lead Counsel had a well-informed basis for assessing the strengths, and weaknesses, of the Settlement Class's claims and Defendants' defenses when they agreed to settle the Action, given their investigation in connection with drafting two amended complaints and their briefing of Defendants' joint motion to dismiss and Lead Plaintiffs' motion to alter and amend.  Moreover, the judgment of Co-Lead Counsel – law firms that are highly experienced in securities class action litigation – that the Settlement is in the best interests of the Settlement Class is entitled to "great weight."  *City of Providence v. Aeropostale Inc.*, No. 11 civ. 7132, 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x. 73 (2d Cir. 2015); *Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 8331, 2014 WL

---

[5]      "[T]hat the Settlement was reached . . . with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable."  *In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689 (SAS), 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003).

4819-5015-8789.v1

1224666, at *2 (S.D.N.Y. Mar. 24, 2014); *accord*, *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (courts consistently give "'great weight' . . . to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation"); *see also* Exs. 9-D, 10-C.

As set forth in the previously filed motion for Preliminary Approval of the Settlement and their motions seeking appointment as lead plaintiffs, Lead Plaintiffs, like all other members of the Settlement Class, acquired shares of the Fund during the Class Period and were allegedly damaged as a result.  ECF Nos. 90-91.  Thus, the claims of the Settlement Class and Lead Plaintiffs would prevail or fail in unison, and the common objective of maximizing recovery from Defendants aligns the interests of Lead Plaintiffs and all members of the Settlement Class.  *See, e.g.*, *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.").  Moreover, the Court-appointed Lead Plaintiffs took an active role in the litigation, as envisioned by the PSLRA, and endorse the Settlement.  *See* Exs. 2 to 7.

Accordingly, Lead Plaintiffs and Co-Lead Counsel have adequately represented the Settlement Class and negotiated the Settlement at arm's length, thus the Settlement is procedurally fair.

**D.     The Settlement Is Substantively Fair, Reasonable, and Adequate**

The Settlement is also substantively fair, reasonable, and adequate.  "In finding that a settlement is fair, not every factor must weigh in favor of settlement, 'rather the court should consider the totality of these factors in light of the particular circumstances.'"  *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004).  Additionally, in deciding whether to

approve a settlement, a court "should not attempt to approximate a litigated determination of the merits of the case lest the process of determining whether to approve a settlement simply substitute one complex, time consuming and expensive litigation for another." *White v. First Am. Registry, Inc.*, No. 04 Civ. 1611 (LAK), 2007 WL 703926, at *2 (S.D.N.Y. Mar. 7, 2007). Here, the Settlement fully satisfies the criteria for approval articulated in *Grinnell* and Rule 23(e)(2).

### 1.    The Complexity, Expense, and Likely Duration of the Litigation Support Approval of the Settlement

Securities class actions like this one are by their nature complicated, and district courts within the Second Circuit have long recognized that "[a]s a general rule, securities class actions are 'notably difficult and notoriously uncertain' to litigate." *In re Facebook*, 2015 WL 6971424, at *3; *In re Bear Stearns Cos., Inc.*, 909 F. Supp. 2d 259, 266 (S.D.N.Y. 2012); *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510, 2007 WL 1191048, at *10 (E.D.N.Y. Apr. 19, 2007) ("Securities class actions are generally complex and expensive to prosecute.").

This case was no exception. As discussed in the Joint Declaration, the case involved complicated and intricate issues related to, among other things, derivative trading strategies, the value of the Fund and its assets, the mutual fund industry, calculation of damages and the interplay with the Fund's net asset value ("NAV"), and negative loss causation issues. Restoring the claims through the motion to alter and amend or an appeal to the Second Circuit, surviving a second motion to dismiss, certifying the class, completing fact and expert discovery, prevailing on summary judgment and then achieving a litigated verdict at trial (and sustaining any such verdict in the inevitable appeal) would have been a very difficult and risky undertaking that would have required substantial additional time and expense. *See In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 481 (S.D.N.Y. 2009) (finding that the complexity, expense and duration of continued litigation

- 8 -

supports final approval where, among other things "motions would be filed raising every possible kind of pre-trial, trial and post-trial issue conceivable").

Indeed, the trial of the Action here would have required extensive expert testimony on numerous contested issues, including falsity, materiality, causation and damages, all within the nuanced and esoteric context of derivative trading and the mutual fund industry. Courts routinely observe that these sorts of disputes – requiring dueling testimony from experts – are particularly difficult for plaintiffs to litigate. *See, e.g., In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 579-80 (S.D.N.Y. 2008) (in a "battle of experts, it is virtually impossible to predict with any certainty which testimony would be credited").

Of course, even if Lead Plaintiffs had prevailed at trial, it is virtually certain that appeals would be taken, which would have, at best, substantially delayed any recovery for the Settlement Class. *See Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("[E]ven if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would in light of the time value of money, make future recoveries less valuable than this current recovery."). At worst, there is always a risk that the verdict could be reversed by the trial court or on appeal. *See, e.g., Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (reversing $81 million jury verdict and dismissing case with prejudice in securities action); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation); *In re BankAtlantic Bancorp, Inc.*, No. 07-cv-61542 (S.D. Fla. 2010) (in case tried by Labaton Sucharow, after plaintiffs' jury verdict, court granted defendants' motion for judgment as a matter of law on loss causation grounds), *aff'd*, 688 F. 3d 713 (11th Cir. 2012) (trial court erred, but defendants entitled to judgment as matter of law on lack of

- 9 -

loss causation); *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (in case tried by Robbins Geller, reversing and remanding jury verdict of $2.46 billion after 13 years of litigation on loss causation grounds and error in jury instruction under *Janus Capital Grp., Inc. v. First Derivative Traders*, 131 S. Ct. 2296 (2011)); *cf. In re Apollo Grp., Inc. Sec. Litig.*, No. CV-04-2147-PHX-JAT, 2008 WL 3072731 (D. Ariz. Aug. 4, 2008), *rev'd*, No. 08-16971, 2010 WL 5927988 (9th Cir. June 23, 2010) (trial court overturned unanimous verdict for plaintiffs, later reinstated by the Ninth Circuit Court of Appeals, and judgment re-entered after denial of *certiorari* by the U.S. Supreme Court).

## 2. The Reaction of the Settlement Class to the Settlement

The reaction of the class to a proposed settlement is a significant factor to be weighed in considering its fairness and adequacy. *See, e.g.*, *Bear Stearns*, 909 F. Supp. 2d at 266-67; *In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM)(PED), 2010 WL 4537550, at *16 (S.D.N.Y. Nov. 8, 2010).

Pursuant to the Preliminary Approval Order, the Court-appointed Claims Administrator, A.B. Data, Ltd. ("A.B. Data"), mailed copies of the Postcard Notice to record holders identified in the Fund's transfer records and potential Settlement Class Members and their nominees. *See* Declaration of Adam D. Walter Regarding: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections ("A.B. Data Decl."), Ex. 1, ¶¶2-8. As of July 29, 2020, A.B. Data has mailed 212,835 copies of the Postcard Notice to potential Settlement Class Members and their nominees. *Id.*, ¶8. In addition, A.B. Data posted the long-form Notice and Claim Form on the website dedicated to the Settlement, which also has on-line claim submission capability. *Id.*, ¶11. The Summary Notice was published in *Investor's Business*

- 10 -

*Daily* on May 4, 2020 and transmitted over the internet using *PR Newswire* on May 4, 2020 and May 8, 2020. *Id.*, ¶9.

The notice program provided information about the essential terms of the Settlement, Co-Lead Counsel's Fee and Expense Application, and the proposed Plan of Allocation and informed potential Settlement Class Members of, among other things, their right to object to any aspect of the Settlement, Fee and Expense Application, and/or Plan of Allocation, as well as the procedure for submitting Claim Forms, and for requesting exclusion from the Settlement Class. While the deadline set by the Court for Settlement Class Members to object or request exclusion (August 13, 2020) has not yet passed, to date, only one objection and three requests for exclusion have been received. "'If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.'" *Wal-Mart*, 396 F.3d at 118; *cf In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d at 594 (finding fact that "only one objection to the fee request was received is powerful evidence that the requested fee is fair and reasonable").

Although Co-Lead Counsel will, consistent with the Preliminary Approval Order, file reply papers no later than August 27, 2020 addressing any objections in detail, Co-Lead Counsel wanted to take this opportunity to briefly address the one objection received to date. *See* Letter from Robert E. McCarthy, dated July 21, 2020. ECF No. 99. There are several reasons why Mr. McCarthy's objection is without merit and should be overruled.

As an initial matter, despite Mr. McCarthy's assertions to the contrary, the Claims Administrator's records reflect that several copies of the Postcard Notice were timely mailed to addresses for Mr. McCarthy in New Jersey, and none were returned to A.B. Data as undeliverable. A.B. Data Decl., ¶14. Second, Lead Plaintiffs in fact pursued, and Judge Spatt explicitly rejected, many of the claims and arguments that Mr. McCarthy suggests Lead Plaintiffs should have pursued.

- 11 -

*See, e.g.*, Am. Compl., ¶¶123-132 (Fund's statements regarding capital preservation, risk, volatility, and market correlation alleged to be false and misleading) and *id*.,¶¶143-153 (Fund's statements regarding risk controls alleged to be false and misleading).  In fact, many of the allegations found in the CFTC and SEC Complaints, cited by Mr. McCarthy, were originally pled in the Amended Complaint.  *Compare* Am. Compl., ¶¶103-104, 149 *with* CFTC Compl., ¶90 *and* SEC Compl., ¶¶3-4, 25 (discussing how the Fund misrepresented that its maximum loss was 8%).  Third, the CFTC/SEC settlements are precisely that, *settlements*, wherein the settling defendants have not admitted any wrongdoing, no wrongdoing has otherwise been proven, and no findings have been made that would assist Lead Plaintiffs in this Action.  Fourth, Mr. McCarthy criticizes Lead Plaintiffs' decision to voluntarily dismiss Mr. Walczak.  However, in exchange for his voluntary dismissal, Mr. Walczak acted as a cooperating witness and provided valuable information that Lead Plaintiffs would not otherwise have been able to obtain, particularly given the stay of discovery under the PSLRA.  Indeed, many of the allegations in the [Proposed] Second Amended Complaint were based on information garnered from or confirmed by Mr. Walczak.  *See* Lead Plaintiffs' Motion to Alter or Amend the Dismissal Judgment and for Leave to file a [Proposed] Second Amended Complaint (ECF Nos. 78-80).  Co-Lead Counsel's decision to dismiss Mr. Walczak was well reasoned and within the strategic decision making authority that the Court granted Co-Lead Counsel when it appointed them to represent Lead Plaintiffs.  Notwithstanding Mr. Walczak's assistance, all the obstacles to restoring the dismissed claims and ultimately prevailing, as discussed herein, remained.

In sum, the overall reaction of the Settlement Class to date supports approval of the Settlement.

- 12 -

### 3.    The Stage of the Proceedings and the Amount of Information Available to Counsel Support Approval of the Settlement

In considering this factor, "the question is whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement." *Bear Stearns*, 909 F. Supp. 2d at 267; *see also In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 333 (E.D.N.Y. 2010) (citation omitted) (same).  To satisfy this factor, parties need not have engaged in formal or extensive discovery.  *See Burns v. FalconStor Software, Inc.*, No. 10 CV 4572, 2014 WL 12917621, at *4 (E.D.N.Y. Apr. 11, 2014) (approving $5 million settlement reached during pendency of motion to dismiss and finding counsel had sufficient information where counsel conducted a thorough investigation, opposed a motion to dismiss, retained a damages expert, and engaged in arm's-length negotiations with the assistance of a mediator); *see also Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 363 (S.D.N.Y. 2002). "[C]ounsel should not be penalized for entering into early settlement."  *Burns*, 2014 WL 12917621, at *9.

Here, as detailed in the Joint Declaration, in connection with filing the Amended Complaint and the [Proposed] Second Amended Complaint, Co-Lead Counsel conducted a robust investigation that included, among other things, reviewing SEC filings by the Trust; publicly available news articles and reports about the Trust, Catalyst, and the Fund; as well as press releases, investor communications, other public statements issued by Defendants and media reports about the Defendants.  Co-Lead Counsel also conducted detailed analyses of the Fund and its assets, including using proprietary sources of market data, and retained and consulted with financial industry experts familiar with mutual funds and the derivative trading strategies at issue.  Co-Lead Counsel also obtained information from Mr. Walczak, the former portfolio manager of the Fund.  Finally, Co-

- 13 -

Lead Counsel analyzed complex negative causation issues with the assistance of a consulting damages expert.  Joint Decl., ¶¶37-46, 57.

Armed with this substantial base of knowledge, Lead Plaintiffs were in a position to engage in well-informed settlement negotiations with Defendants and to balance the proposed settlement amount with a well-educated assessment of the likelihood of overcoming the risks of the litigation, as well as the financial barriers to a recovery.  Accordingly, Lead Plaintiffs and Co-Lead Counsel respectfully submit that they had "a clear view of the strengths and weaknesses of their case[]" and of the range of possible outcomes at trial.  *Teachers Ret. Sys. of La. v. A.C.L.N., Ltd*., No. 01-Civ-11814 (MP), 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004).  The Court thus should find that this factor also supports approval.

### 4. The Risks of Establishing Liability and Damages Support Approval of the Settlement

In assessing the fairness, reasonableness, and adequacy of a settlement, courts should consider the "risks of establishing liability [and] the risks of establishing damages."  *Grinnell*, 495 F.2d at 463; *see also* Fed. R. Civ. P. 23(e)(2)(C)(i).

The principal claims in the Action are based on Section 11 of the Securities Act of 1933 ("Securities Act").  Section 11 of the Securities Act creates liability where defendants issue untrue statements of fact or material omissions of fact within registration statements, which causes damage to investors.  15 U.S.C. §77k.  Section 12(a)(2) of the Securities Act creates liability for any person who offers or sells a security through a prospectus or an oral communication containing a material misstatement or omission, which causes damages to investors.  15 U.S.C. §77l.  Securities class actions present numerous hurdles to proving liability that are difficult for plaintiffs to meet.  *See In re AOL Time Warner Inc.*, No. 02 cv 5575, 2006 WL 903236, at *11 (S.D.N.Y. Apr. 6, 2006) (noting that "[t]he difficulty of establishing liability is a common risk of securities litigation"); *In re*

- 14 -

*Alloy, Inc. Sec. Litig.*, No. 03-1597, 2004 WL 2750089, at *1 (S.D.N.Y. Dec. 2, 2004) (finding that issues present in securities action presented significant hurdles to proving liability).

Here, in particular, Defendants vigorously challenged Lead Plaintiffs on falsity and materiality and raised significant damages and negative causation defenses.

### a.      Risks to Proving Liability

While Lead Plaintiffs believe they would ultimately prevail in restoring the claims and moving forward with the [Proposed] Second Amended Complaint, a favorable ruling on a second motion to dismiss or in connection with summary judgment, or findings in favor of the class at trial, were far from assured.

Lead Plaintiffs would need to prove to the satisfaction of the Court and jury that the Offering Documents for Fund shares contained false and misleading statements that were material to a reasonable investor. Defendants have adamantly denied liability and prevailed in their first motion to dismiss. They maintain that the Offering Documents were not materially false or misleading because they, among other things: (i) accurately stated the investment objectives announcing the goal of the Fund, not a promise of performance; (ii) detailed the Fund's trading strategies, including descriptions of the particular options the Fund would trade; and (iii) disclosed the risks associated with those strategies, including the risk of large, immediate and/or unlimited losses. *See, e.g.*, *Altayyar v. Etsy, Inc.*, 242 F. Supp. 3d 161 (S.D.N.Y. 2017), *aff'd*, 735 F. App'x. 35 (2d Cir. 2018) (dismissing Section 11 claims where the offering documents "openly acknowledged" the risks in question). NLD would also argue that it – the underwriter – is entitled to a "due diligence" defense, as it conducted robust and thorough due diligence to confirm the accuracy and truthfulness of the Offering Documents. *See* Joint Decl., ¶¶61-68.

- 15 -

Although Lead Plaintiffs would have opposed these arguments with significant support, there was no guarantee of success in connection with the next motion to dismiss, and many of these same arguments could have been continued at summary judgment, trial, or on appeal and, in the absence of any settlement, presumably would have been.

### b.    Risks Related to Negative Causation and Damages

If Lead Plaintiffs established the liability of Defendants, they would still face significant risks and uncertainty regarding proving damages.  Although the Fund lost $600 million in value in February 2017, NAV is a statutorily defined formula that depends on the value of the Fund's underlying securities, minus its liabilities.  Defendants' position is that the NAV of the Fund decreased only when the value of the securities in the Fund's portfolio decreased.  In turn, according to Defendants, the Fund's share price only increased when the value of its assets increased and could not have been inflated by any alleged misinformation in the market.  Defendants argued that even had the Fund misstated or omitted a risk relating to the Fund's shares, materialization of those risks could not have affected the value of the underlying securities, and therefore could not have affected the value of the NAV.  Joint Decl., ¶¶69-71; *see, e.g.*, *In re State Street Bank & Trust Co. Fixed Income Funds Inv. Litig.*, 774 F. Supp. 2d 584, 590 (S.D.N.Y. 2011) (Crediting argument and holding, "defendants have satisfied their burden of pleading facially apparent negative loss causation.  The statute restricts damages to those depreciations in the NAV that actually *result from* the materialization of a risk contained within a material misstatement, not to those that are somehow connected with the misstatement or even those that are simply "within the zone of risk" of the misstatement.  In so concluding, the Court notes that it is bound by the text of sections 11 and 12.").

Even if the Defendants failed in this argument, the difficulties and cost of quantifying damages in an open-ended mutual fund case, such as this one, would have been significant and

- 16 -

challenging.  At trial, Defendants would have likely presented expert evidence that unforeseen forces outside Defendants' control caused the losses suffered by the Fund.  While Co-Lead Counsel would work extensively with Lead Plaintiffs' damages experts with a view towards presenting compelling arguments to the jury and prevailing on these matters at trial, Defendants would have put forth well-qualified experts of their own who were likely to opine at trial that the Settlement Class suffered little or no damages.  As courts have long recognized, the substantial uncertainty as to which side's experts' view might be credited by the jury presents a serious litigation risk.  *See In re IMAX Sec. Litig.*, 283 F.R.D. 178, 193 (S.D.N.Y. 2012) ("[I]t is well established that damages calculations in securities class actions often descend into a battle of experts."); *Telik*, 576 F. Supp. 2d at 579-80 (in this "'battle of experts', it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found . . ."); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. at 459 ("[P]roof of damages in securities cases is always difficult and invariably requires expert testimony which may, or may not be, accepted by a jury.").

Given all of these risks with respect to liability, negative causation, and damages, Lead Plaintiffs and Co-Lead Counsel respectfully submit that it is in the best interests of the Settlement Class to accept the certain and substantial benefit conferred by the Settlement.

### 5.    The Risks of Maintaining Class Certification

Although class certification had not yet been briefed in this case, Defendants would undoubtedly have raised vigorous challenges to class certification, and such disputes "could well devolve into yet another battle of the experts." *Bear Stearns*, 909 F. Supp. 2d at 268.  Additionally, class certification can be reviewed and modified at any time by the Court before final judgment. *See* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment.").  Although Lead Plaintiffs believe there are strong grounds for

- 17 -

certifying a litigation class, discussed in Lead Plaintiffs' motion for preliminary approval of the Settlement (ECF No. 91), the Settlement avoids any uncertainty with respect to class certification and the risks of maintaining certification of the Settlement Class through trial and on appeal.  *See Ebbert v. Nassau Cty.*, No. CV 05-5445 AKT, 2011 WL 6826121, at *12 (E.D.N.Y. Dec. 22, 2011) (risk of de-certification of the certified class supported approval of settlement).[6]

### 6.     The Ability of Defendants to Withstand a Greater Judgment

Defendants' financial condition here weighs in favor of approval of the Settlement.  *See, e.g.*, *Maley*, 186 F. Supp. 2d at 365 ("given Del Global's dire financial condition, it is unlikely that the Company could withstand a substantial judgment"); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. at 460 (ability to withstand a greater judgment supports final approval where the "main settlement funds available to the individuals are the insurance proceeds" which "would be largely consumed by defense costs if this litigation were to continue").

Here, at the time the Parties entered into the Settlement, the Trust and Catalyst were facing severe financial problems that raised significant questions about their future.  For example, the assets under management for the Trust, its source of revenue, had decreased substantially by the time of the Settlement.  In addition, available insurance was being depleted and there was a risk that insurance could be exhausted well before the Parties even reached trial.  Joint Decl., ¶72; *see Prasker v. Asia Five Eight LLC*, No. 08 Civ. 5811(MGC), 2010 WL 476009, at *5 (S.D.N.Y. Jan. 6, 2010)

---

[6]     In the Preliminary Approval Order (ECF No. 95), the Court preliminarily certified the Settlement Class for settlement purposes.  There have been no developments in the case that would undermine that determination and, for all the reasons stated in the Memorandum of Law in Support of Lead Plaintiffs' Unopposed to Motion for Preliminary Approval of Proposed Class Action Settlement (ECF No. 91), incorporated herein by reference, Lead Plaintiffs now request that the Court reiterate its prior certification of the Settlement Class pursuant to Fed. R. Civ. P. 23(a) and (b)(3), for settlement purposes, and the appointment of Lead Plaintiffs as Class Representatives and Labaton Sucharow and Robbins Geller as Class Counsel.

- 18 -

(approving settlement and noting that "[t]he settlement eliminated the risk of collection by requiring Defendants to pay the Fund into escrow").  Accordingly, even if Lead Plaintiffs were victorious at trial, there might have been no money left to satisfy the judgment, thus, it was in the interests of the Settlement Class to obtain a settlement sooner rather than later.

<blockquote>

**7.     The Range of Reasonableness of the Settlement Amount in Light of the Best Possible Recovery and all the Attendant Risks of Litigation Support Approval of the Settlement**
</blockquote>

The last two substantive factors courts consider are the range of reasonableness of the settlement fund in light of: (i) the best possible recovery; and (ii) litigation risks.  In analyzing these factors, the issue for the Court is not whether the settlement represents the best possible recovery, but how the settlement relates to the strengths and weaknesses of the case.  The court "consider[s] and weigh[s] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *Grinnell*, 495 F.2d at 462.  The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).  "[I]n any case there is a range of reasonableness with respect to a settlement. . . ." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

Here, as discussed above, there were serious obstacles to both quantifying aggregate damages and proving any damages in the case.  The value of the claims was also severely impacted by the Court's dismissal of the case with prejudice.  In contrast, the $3,325,000 settlement, at this juncture, results in a certain and favorable recovery, without the considerable risk, expense, and delay of additional motion to dismiss practice or an appeal, fact and expert discovery, summary judgment

- 19 -

motions, and trial and post-trial litigation.  In sum, the *Grinnell* factors support approval of the Settlement.

> **E.  Application of the Additional Factors Identified in Rule 23(e)(2) Supports Approval of the Settlement as Fair, Reasonable, and Adequate**

The proposed Settlement also meets the additional criteria set forth in the amendments to Rule 23(e)(2), which are not otherwise covered by the Second Circuit factors discussed above.

Rule 23(e)(2)(C)(ii) considers whether the relief is adequate, taking into account the "effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims."  As explained in Section III below concerning the fairness, adequacy and reasonableness of the proposed Plan of Allocation, the Net Settlement Fund will be distributed to Settlement Class Members who submit valid and timely claims.  The Claims Administrator will calculate claimants' Recognized Claims using the transactional information provided by claimants in their Claim Forms, which can be mailed to the Claims Administrator, submitted online using the settlement website, or, for third-party filers or large investors with hundreds of transactions, via e-mail to the Claims Administrator's electronic filing team.  Because most securities are held in "street name" by the brokers that buy them on behalf of clients, the Claims Administrator, Co-Lead Counsel, and Defendants do not have Settlement Class Members' transactional data, and a claims process is required.

Once the Claims Administrator has processed submitted claims, notified claimants of deficiencies or ineligibility, processed responses, and made claim determinations, distributions will be made to eligible claimants.  *See* Stipulation, ¶¶22-29.  After an initial distribution of the Net Settlement Fund, if there is any balance remaining in the Net Settlement Fund after at least six months from the date of initial distribution, Co-Lead Counsel will, if feasible and economical, re-

- 20 -

distribute the balance among eligible claimants who have cashed their checks. These re-distributions will be repeated until the balance in the Net Settlement Fund is no longer feasible to distribute. *See* Stipulation, ¶26. Any balance that still remains in the Net Settlement Fund after re-distribution(s), which is not feasible or economical to reallocate, after payment of any outstanding Notice and Administration Expenses or Taxes, will be contributed to the Council of Institutional Investors ("CII") or such other non-profit and non-sectarian organization(s) approved by the Court.[7] *Id*.

The terms of any proposed award of attorneys' fees, including timing of payment (Rule 23(e)(2)(C)(iii)), are discussed in Co-Lead Counsel's accompanying Fee and Expense Application.

Rule 23(e)(2)(C)(iv) asks the Court to consider the fairness of the proposed Settlement in light of any agreement required to be identified under Rule 23(e)(3). Here, the only agreements made by the Parties in connection with the Settlement are the Stipulation and the Supplemental Agreement Regarding Requests for Exclusion, which addresses the circumstances under which Defendants may terminate the Settlement if the number of exclusion requests received exceeds a particular threshold. *See* Stipulation, ¶40(a). It is standard to keep such supplemental agreements confidential so that a large investor, or a group of investors, cannot intentionally try to leverage a better recovery for themselves by threatening to opt out, at the expense of the class.[8] Pursuant to its

---

[7]     CII is a nonprofit, nonpartisan association of pension funds and other employee benefit funds, foundations, and endowments with combined assets that exceed \$3 trillion, which seeks to educate its members, policymakers, and the public about corporate governance, shareowner rights, and related investment issues. *See* www.cii.org. CII has developed an extensive body of corporate governance best practices that many U.S. companies embrace and is vocal in endorsing policies on many investment-related issues through correspondence, amicus briefs and reports and publications. CII has been approved as a beneficiary of residual settlement proceeds in many securities class actions, such as *In re Royal Ahold N.V. Sec. & ERISA Litig.*, No. 03-MD-1539 (D. Md.); *In re Genworth Fin., Inc. Sec. Litig.*, No. 14-cv-02392-AKH (S.D.N.Y.); and *In re Hewlett-Packard Co. Sec. Litig.*, No. SACV 11-1404 AG (RNBx) (C.D. Cal.).

[8]     *See, e.g.*, *In re HealthSouth Corp. Sec. Litig.*, 334 F. App'x. 248, 250 n.4 (11th Cir. 2009) ("[T]he threshold number of opt outs required to trigger the blow provision is typically not disclosed

- 21 -

terms, the Supplemental Agreement may be submitted to the Court *in camera* or under seal.  The Supplemental Agreement and the Stipulation are the only agreements concerning the Settlement entered into by the Parties.

## III.   THE PLAN OF ALLOCATION FOR THE PROCEEDS OF THE SETTLEMENT TREATS SETTLEMENT CLASS MEMBERS EQUITABLY CONSISTENT WITH RULE 23(e)(2)(D)

The Net Settlement Fund will be apportioned among Settlement Class Members according to the Plan of Allocation approved by the Court.[9]  A plan of allocation for settlement proceeds, like the settlement itself, should be approved if it is fair, reasonable, and adequate.  *See IMAX*, 283 F.R.D. at 192; *Bear Stearns*, 909 F. Supp. 2d at 270.  A plan of allocation with a "rational basis" satisfies this requirement.  *FLAG Telecom*, 2010 WL 4537550, at *21; *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d  at 497.  A plan that reimburses class members based on the relative strength and value of their claims is reasonable.  *See IMAX*, 283 F.R.D. at 192.

Here, the proposed Plan of Allocation, which was developed by Co-Lead Counsel in consultation with Lead Plaintiffs' consulting damages expert, provides a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class Members who submit valid Claim Forms.  The Plan is set forth in full in the Notice, which is posted on the settlement website.  *See* Ex. 1-D at pp. 9-11.  It provides for the distribution of the Net Settlement Fund based upon each Settlement Class Member's "Recognized Claim," as calculated by the formulas described in the Notice, which are based on the statutory computation of damages under the Securities Act.  All

---

and is kept confidential to encourage settlement and discourage third parties from soliciting class members to opt out."); *see also* 2 McLaughlin on Class Actions, §6.22 (9th ed. 2012) ("Accordingly, a confidentially 'blow up' or termination provision allowing the defendant to terminate the settlement agreement if a designated number or percentage of class members opt out of the settlement may remain non-public.").

[9]   Lead Plaintiffs' claims will also be governed by the Plan of Allocation.

Settlement Class Members that were harmed as a result of the alleged wrongdoing, and submit a valid claim, will receive their *pro rata* share of the Net Settlement Fund based on their "Recognized Claim" under the plan.  *See* Notice, ¶¶58-59; s*ee also In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 135 (S.D.N.Y. 2008) ("A plan of allocation that calls for the *pro rata* distribution of settlement proceeds on the basis of investment loss is presumptively reasonable.").  A.B. Data, the Court-approved Claims Administrator, will calculate each claimant's Recognized Claim by applying the Plan of Allocation, and then will calculate each Authorized Claimant's *pro rata* share using the total amount of Recognized Claims.

For these reasons, Co-Lead Counsel believe that the Plan of Allocation provides a fair and reasonable method to equitably allocate the Net Settlement Fund.  To date, there have been no objections to the proposed Plan of Allocation.

## IV.    NOTICE TO THE SETTLEMENT CLASS SATISFIED THE REQUIREMENTS OF RULE 23 AND DUE PROCESS

Lead Plaintiffs have provided the Settlement Class with notice of the proposed Settlement that satisfied all the requirements of Rule 23(e) and due process.  Rule 23(c)(2)(B) requires notice of the pendency of the class action to be "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2).  It must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950).  Due process is satisfied if the notice "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores*, 396 F.3d at 114.  Both the substance of the notice program and the method of its dissemination satisfied these standards.

- 23 -

The notice program included individual notification by mail in the form of the Postcard Notice, in order to save costs, publication of the Summary Notice in a national newspaper focusing on investors, dissemination over the internet on two occasions using a wire service, and posting of the long-form Notice on a website to be developed for the Settlement, from which copies of the Notice and Claim Form can be downloaded. *See generally* A.B. Data Decl.  Courts regularly allow notice by postcard. *See, e.g.*, *McLaughlin v. IDT Energy*, No. 14 CV 4107 (ENV)(RML), 2018 WL 3642627, at *9 (E.D.N.Y. July 30, 2018) (approving "short-form notice to the proposed settlement class sent as a postcard and a long-form notice distributed via the Internet"); *see also Edwards v. N. Am. Power & Gas, LLC*, No. 3:14-cv-01714 (VAB), 2018 WL 3715273, at *5 (D. Conn. Aug. 3, 2018) (approving notice by postcard, which directed settlement class members to settlement website); *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 182-83 (S.D.N.Y. 2014) (approving postcard notice to "minimize notice costs").

Collectively, the notice program provided all of the necessary information for Settlement Class Members to make an informed decision regarding the Settlement, the Fee and Expense Application, and the Plan of Allocation.  Settlement Class Members were informed of, among other things: (1) the amount of the Settlement; (2) the reasons why the Parties are proposing the Settlement; (3) the estimated average recovery per affected share of the Fund; (4) the maximum amount of attorneys' fees and expenses that would be sought; (5) the identity and contact information for the representatives of Co-Lead Counsel who are available to answer questions; (6) the right of Settlement Class Members to object to the Settlement, Plan of Allocation and/or the amount of attorneys' fees and expenses sought, or seek exclusion from the Settlement Class; (7) the binding effect of a judgment on Settlement Class Members; (8) the Plan of Allocation and claim

4819-5015-8789.v1

procedures; and (9) the dates and deadlines for Settlement-related events. *See* 15 U.S.C. §77z-1(a)(7).

This combination of individual first-class mail to those who could be identified with reasonable effort, supplemented by notice in an appropriate publication, transmitted over a newswire, and set forth on internet websites, was "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see also Lomeli v. Sec. & Inv. Co. Bahrain*, 546 F. App'x. 37, 41 (2d Cir. 2013) (citing *Wal-Mart Stores*, 396 F.3d 96 at 114).

## V.    CONCLUSION

For all the foregoing reasons, Lead Plaintiffs respectfully request that the Court approve the proposed Settlement as fair, reasonable, and adequate and approve the Plan of Allocation as fair, reasonable, and adequate.  Proposed orders will be submitted with Lead Plaintiffs' reply papers, after the deadlines for objections and seeking exclusion have passed.

DATED:  July 30, 2020                     Respectfully submitted,

                                          ROBBINS GELLER RUDMAN
                                            & DOWD LLP
                                          SAMUEL H. RUDMAN
                                          EVAN J. KAUFMAN


                                          s/ Evan J. Kaufman
                                          EVAN J. KAUFMAN

                                          58 South Service Road, Suite 200
                                          Melville, NY  11747
                                          Telephone:  631/367-7100
                                          631/367-1173 (fax)
                                          srudman@rgrdlaw.com
                                          ekaufman@rgrdlaw.com

- 25 -

LABATON SUCHAROW LLP
JAMES W. JOHNSON
MICHAEL H. ROGERS
JOHN J. ESMAY
140 Broadway, 34th Floor
New York, NY 10005
Telephone: 212/907-0700
212/818-0477 (fax)
jjohnson@labaton.com
mrogers@labaton.com
jesmay@labaton.com

Lead Counsel for Plaintiffs

JOHNSON FISTEL, LLP
FRANK J. JOHNSON
655 West Broadway, Suite 1400
San Diego, CA 92101
Telephone: 619/230-0063
619/255-1856 (fax)
frankj@johnsonfistel.com

JOHNSON FISTEL, LLP
W. SCOTT HOLLEMAN
99 Madison Avenue, 5th Floor
New York, NY 10016
Telephone: 212/802-1486
212/602-1592 (fax)
scotth@johnsonfistel.com

Additional Counsel for Plaintiffs

- 26 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 30, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered ECF participants.

s/ Evan J. Kaufman
EVAN J. KAUFMAN